Melvin K. Silverman, Esq.
M. K. Silverman & Associates, P.C.
One Gateway Center
Suite 2600
Newark, NJ 07102
Phone: 973-508-5033
Facsimile: 888 545-6365
E-mail: mks@mkspc.com

Attorney for Plaintiff IRREVOCABLE TRUST OF
ANTHONY J. ANTONIOUS

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IRREVOCABLE TRUST OF
ANTHONY J. ANTONIOUS,

              Plaintiff,

v.

NIKE, INC.,

              Defendant.

Case No.  2:11-cv-06327-KM-MAH

**Judge Kevin McNulty**
**Magistrate Judge Michael A. Hammer**

## PLAINTIFF'S OPENING MARKMAN BRIEF UNDER LOC. PAT. R. 4.5(a)

# TABLE OF CONTENTS

Table of Contents.................................................................................i

Table of Authorities...........................................................................iii

I.      Introduction............................................................................1

II.     The Law Of Claim Construction...............................................2

        Claim Terms Are Given Their Ordinary Meaning
        Unless They Are Otherwise Defined In The Patent.....................3

        1.      The Drawings Of The Patent ........................................5

        2.      Claims Terms Of Approximation...................................5

        3.      Commonly Understood Terms........................................6

        4.      Hierarchy Of Evidence................................................6


III.    The Construction Of The Claim Terms In The '574 Patent ...................7

IV.     The Construction Of Certain Agreed Upon Claim Terms Pursuant to
        Pat. R. 4.3(a) Affects The Construction Of Certain Term Claims And
        Phrases Upon Which The Parties Do Not Concur ...............................8

V.      Claims At Issue .......................................................................8

VI.     Claim Term: "Substantially Parallel With" ......................................9

        1. Defendants' Proposed Definition Improperly Limits The
           Claim Language................................................................12

VII.    Claim Term: "C-shaped Slot" ......................................................16

VIII.   Claim Term: "Skid Surface" .......................................................19

IX.     Claim Term: "Wall Separating" ...................................................20

X.      Claim Term: "Offset From" ........................................................29

XI      Conclusion .............................................................................31

# TABLE OF AUTHORITIES

**CASES**                                                                                     **PAGE**

3M Innovative Properties Co. v. Avery Dennison Corp.,
350 F.3d 1365 (Fed. Cir. 2003)……………………………………………………..…..…3

AbTox, Inc. v. Exitron Corp., 122 F.3d 1019 (Fed. Cir. 1997)…………………....................4, 14

Anchor Wall System v. Rockwood Retaining Walls, Inc.,
340 F.3d 1298 (Fed. Cir. 2003)…………………………………………………..…6, 11, 12, 19

Andrew Corp. v. Gabriel Electronics, Inc., 847 F. 2d 819 (Fed. Cir. 1988)…………………..6, 12

Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364 (Fed. Cir. 2003)………………………..3, 18

Bowers v. Baystate Technologies, Inc., 320 F.3d 1316 (Fed. Cir. 2003)…………………...….3

Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc., 334 F.3d 1294 (Fed. Cir. 2003)……………..3

Brown v. 3M, 265 F.3d 1349 (Fed. Cir. 2001)…………………………………………………....7

California Medical Prods. v. Tecnol Medical Prods., 921 F. Supp. 1219 (Del. 1999)…………..18

CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359 (Fed. Cir. 2002)………………………..3, 4

Cordis Corp. v. Medtronic Ave, Inc., 339 F.3d 1352 (Fed. Cir. 2002)……………..…………..12

Cybor Corp. v. FAS Technologies, 138 F.3d 1448 (Fed. Cir. 1998)………………...……………2

Ecolab, Inc. v. Envirochem, Inc. 264 F. 3d 1358 (Fed. Cir. 2001)…………………………... 6, 12

Edward Lifesciences, LLC v. Cook, Inc., 582 F.3d 1322, 1329 (Fed. Cir. 2009)……………..….4

Hockerson-Halberstadt, Inc. v. Avia Group Int'l, 222 F.3d  951 (Fed. Cir. 2000)………..…..6, 19

In Re Wright, 569 F.2d 1124 (CCPA 1977)………………………………………………….…..6

Insight Tech, Inc. v. Surefire, LLC, 618 f. Supp. 2d 2114 (Dist. N.H. 2009) …………………..18

Interactive Gift Express, Inc. v. CompuServe, Inc.,
256 F.3d 1323 (Fed. Cir. 2001)……………………………………………………………….…7

Kara Technology v. Stamps.com, 582 F.3d 1341 (Fed. Cir. 2009)………………………………4

Key Mfg. Group, Inc. v. Microdot, Inc., 925 F.2d 1444 (Fed. Cir. 1991)...........................3

Lisle Corp. v. A.J. Mfg. Co., 289 F. Supp. 2d 1048 (N.D. Ill. 2003).............................. 18

Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995).............................3

Markman v. Westview Instruments, 517 U.S. 370 (1996)...........................................3

Modine Mfg. Co. v. VSITC, 75 F.3d 1545, 1551 (Fed. Cir. 1996)...........................10, 11

Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314 (Fed. Cir. 2003)...............................4

Pall Corp. v. Micron Separation, Inc., 66 F.3d 1211 (Fed. Cir. 1995)............................12

Phillips v. AWH Corp., 415 Fed, 3d. 1303 (Fed. Cir. 2005)..........................................5

Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,
2010 U.S. Dist. LEXIS 36127, *26 (S.D. Cal. 2010)................................................18

Prima Tek II, L.L.C. v. Polypap, S.A.R.L., 318 F.3d 1143 (Fed. Cir. 2003)....................3, 18

Resonate Inc. v. Alteon Websystems, Inc., 338 F.3d 1360 (Fed. Cir. 2003)........................4

ResQNet.com, Inc. v. Lansa, Inc., 346 F.3d 1374 (Fed. Cir. 2003)..................................4

Samson Mfg. Corp. v. Austin Precision Prods.,
2010 U.S. Dist. LEXIS 64287, *16 (Dist. Mass. 2010).....................................12, 13, 15

Senior Indus. v. Thomas & Betts Corp., 2001 U.S. Dist. LEXIS 16901 (N.D. Ill. 2001) ......... 18

Standard Oil Co. v. American Cyanamid Co.,774 F.2d 448 (Fed. Cir. 1985).......................4

Sundance, Inc. v. Demonte Fabricating Ltd., 485 F. Supp. 2d 805 (E.D. Mich. 2008).............13

SunRace Roots v. SRAM and CCS Fitness v. Brunswick,
336 F.3d 1298 (Fed. Cir. 2003).............................................................3, 4, 18

Tapco Int'l Corp. v. Van Mark Prods. Corp.,
1999 U.S. Dist. LEXIS 13351 (E.D. Mich. 1999)....................................................18

Texas Digital Systems, Inc. v. Telegenic, Inc., 308 F.3d 1193 (Fed. Cir. 2002).....................5

Vitronics Corp. v. Conceptronic, Inc.,
90 F.3d 1576 (Fed. Cir. 1996).........................................................3, 4, 5, 7

## I.  **INTRODUCTION**

This is a patent infringement lawsuit involving United States Patent No. 5,735,754 ("the '754 Patent").  The '754 Patent was applied for on December 4, 1996, issued on April 7, 1998, reexamined by the U.S. Patent Office starting on September 2, 2008, and received a Reexamination Certificate on January 5, 2010.  In this brief, Plaintiff explains why certain terms and phrases at issue in the patent-in-suit should be construed in the manner described below.

The patent-in-suit and reexamination certificate (Exh. "A" herewith) teach an aerodynamic invention which more particularly relates to the geometry of a golf club head, ergo, the title of the invention which is "Aerodynamic Metal Wood Golf Club Head."   The inventor, Anthony J. Antonious, was a prolific inventor of golf equipment who, during the course of his life, was issued over 250 patents for his innovations.  Plaintiff, IRREVOCABLE TRUST OF ANTHONY J. ANTONIOUS ("Plaintiff"), is the successor in interest of the '754 Patent.

The invention relates to improvements in the aerodynamic configuration of the base or sole of a club head, which allow greater speed and accuracy of golf swings, for a given application of force by a golfer, by minimizing undesirable effects of air resistance. The inventor explains the nature of his invention as follows: "This aerodynamic surface [of the subject invention] reduces undesirable air turbulence which causes aerodynamic drag and creates a smoother, laminar type airflow around the club head.   A golf club using this improvement permits a golfer to hit longer and straighter golf shots for a given applied swing force.  The aerodynamic structure also

creates increased aerodynamic stability club head resulting in increased control of the club head position during the swing, particularly on impact, thereby producing more consistent golf shots." '754 patent, Col. 1, Lines 38-48.

## II.    THE LAW OF CLAIM CONSTRUCTION

Patent infringement analysis is a two-step process: first, the Court must interpret the meaning (or construction) of the claims; and second, the fact finder must apply the correctly-interpreted claims to the accused device. *Cybor Corp. v. FAS Technologies,* 138 F.3d 1448, 1554 (Fed. Cir. 1998); *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en bank), *aff'd, Markman v. Westview Instruments,* 517 U.S. 370, 384 (1996). Of these two steps, the emphasis must be on proper claim interpretation at the outset: "Before analyzing a claim to determine whether infringement occurs, the court must properly interpret the claim. Improper claim construction can distort the entire infringement analysis." *Key Mfg. Group, Inc. v. Microdot, Inc.* 925 F.2d 1444, 1448 (Fed. Cir. 1991).

In commencing claim construction, the evidentiary review is hierarchical, focusing first on the claims, then on the patent specification, next on the file history and finally on the "extrinsic" evidence, if appropriate. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). When "the plain language of the claims themselves, the written description, and the prosecution history fully support the determined meaning" of a claim term, the Court need not consider extrinsic evidence. *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.,* 334 F.3d 1294, 1298 (Fed. Cir. 2003).

2

## A. CLAIM TERMS ARE GIVEN THEIR ORDINARY MEANING UNLESS THEY ARE OTHERWISE DEFINED IN THE PATENT.

There is a "*heavy presumption*" that a claim term will be given its "*ordinary and customary meaning*" as viewed by the ordinary skilled artisan. *See: Apex Inc. v. Raritan Computer, Inc.,* 325 F.3d 1364, (Fed. Cir. 2003); *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,* 318 F.3d 1143, (Fed. Cir. 2003); *SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.,* 336 F.3d 1298, 1302, 1305, (Fed. Cir. 2003); *Bowers v. Baystate Technologies, Inc.,* 320 F.3d 1316, (Fed. Cir. 2003); *3M Innovative Properties Co. v. Avery Dennison Corp.,* 350 F.3d 1365, (Fed. Cir. 2003), citing: *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed. Cir. 2002); *ResQNet.com, Inc. v. Lansa, Inc.,* 346 F.3d 1374; *E-Pass Technologies, Inc. v. 3Com Corp.,* 343 F.3d 1364, 1368, (Fed. Cir. 2003) (*citing Sunrace Roots v. SRAM and CCS Fitness v. Brunswick*); *and Resonate Inc. v. Alteon Websystems, Inc.,* 338 F.3d 1360, 1365, (Fed. Cir. 2003). (emphasis added). If the patentee has not defined a claim term expressly or impliedly, the term receives its "customary and ordinary meaning" *unless an exception applies*. *CCS Fitness* at 1366 (emphasis added).  The words of the claim are central to a proper interpretation. *Kara Technology v. Stamps.com,* 582 F.3d 1341 (Fed. Cir. 2009).

Exceptions to the "heavy presumption" that the "customary and ordinary meaning" applies occur in cases where "the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history" (*e.g.: Edward Lifesciences, LLC v. Cook, Inc.* 582 F.3d 1322, 1329 (Fed. Cir. 2009)); in construing means-plus-functions limitations (*e.g.: Omega Eng'g, Inc. v. Raytek Corp.,* 334 F.3d 1314, 1321 (Fed. Cir. 2003); if a patentee has relinquished

3

a potential claim construction by an amendment to the claim or in an argument to overcome or distinguish a reference" (*e.g.: Standard Oil Co. v. American Cyanamid Co.* 774 F.2d 448, 452 (Fed. Cir. 1985). Neither of these exceptions is applicable to any claim term in this case.

Claim construction inquiry begins and usually ends…with the actual words of the claim. *AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997). Courts often consult dictionaries in resolving the customary and ordinary meaning of claim terms. *Id.* In all cases, however, the claim construction begins with the language of the claims. *Vitronics Corps. v. Conceptronic, Inc.* 90 F.3d 1576, 1582 (Fed. Cir. 1996). The words of a claim are generally to be accorded their ordinary and customary meaning, *Id.* at 1582, which is "the meaning that the term would have to a person of ordinary skill in the art of question at the time of the invention," *Phillips v. AWH Corp.*, 415 Fed, 3d., 1303, 1312 (Fed. Cir. 2005). The Federal Circuit has cautioned that courts must take care to distinguish between material illuminating the claimed invention and material describing mere embodiments.   Though "[t]he descriptive part of the specification aids in ascertaining the scope and meaning of the claims," *Phillips* at 1315, ***court must not unduly "import limitations" on claim scope from the specification as by "confining the claims to [particular] embodiments. Phillips* at 1323. (emphasis added). Examples or embodiments of the invention described in the specification should not be imported into the claims, when construed. *Texas Digital Systems, Inc. v. Telegenic, Inc.* 308 F.3d 1193, 1205 (Fed. Cir. 2002). As the Federal Circuit has stated, further explaining the application of *Phillips:*

We do not import limitations into claims from examples or embodiments… even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that "the patentee… intends for the claims and the embodiments in the specification to be strictly coextensive.

Extrinsic evidence in general and expert testimony in particular may be used only to help the court come to the proper understanding of the claim language. *Vitronics,* 90 F.3d at 1583. It may not be used to vary or to contradict the claim language. *Id.* Indeed, where the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight. *Id.*

1. The Drawings of the Patent

Further, the mere fact that the patent drawings depict a particular embodiment of the patent does not operate to limit the claims to that specific configuration. *Hockerson-Halberstadt, Inc. v. Avia Group Int'l,* 222 F.3d  951 956 (Fed. Cir. 2000); *Anchor Wall System v. Rockwood Retaining Walls, Inc.* 340 F.3d 1298, 1306-07 (Fed. Cir. 2003).  That is, it is well established that a patent drawing should not define the precise proportion of the elements and may not be relied on to show a particular size if the specification is completely silent on the issue or quantitative values. *In Re Wright* 569 F.2d 1124, 1127 (CCPA 1977)

2. Claims Terms of Approximation

Words of approximation, such as "generally" and "substantially" are descriptive terms, commonly used in patent claims to avoid a strict numeric boundary to the specified parameter." *Ecolab, Inc. v. Envirochem*, Inc. 264 F. 3d 1358, 1367 (Fed. Cir.

2001). CF: *Andrew Corp. v. Gabriel Electronics*, Inc., 847 F. 2d 819, 821-22 (Fed. Cir. 1988) noting that term such as "approaching each other," "close to," "substantially equal," and "closely approximate," are ubiquitously used in patent claims and that such usages, when serving reasonably to describe the claimed subject matter to those skilled in the art in the field of the invention and distinguished the claimed subject matter from the prior art, have been accepted in patent examination and upheld by the Court.

3.  Commonly Understood Terms

The ordinary meaning of claim language as understood by a person of ordinary skill in the art may be readily apparent even to lay judges.  Claim construction in such cases involves little more than the application of the widely accepted meaning of prominently understood words.  *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001), holding that the claims did "not require elaborate interpretation."  As such, and as shown below, this is the case with the claims at issue in this matter.

4.  Hierarchy of Evidence

A hierarchy of intrinsic evidence is to be considered in claims construction.  It is well settled that, in interpreting an asserted claim, the Court should first look to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history.  Such intrinsic evidence is the most significance source of the legally operative meaning of disputed claim language. *Vitornics Corp. v. Concentronic, Inc.* 90 F.3d. 1576, 1582 (Fed. Cir. 1996); *Interactive Gift Express, Inc. v. CompuServe*, Inc., 256 F.3d 1323, 1329 (Fed. Cir. 2001).  All intrinsic evidence however not equal.  *Vitronics*, at 1582 - delineating a hierarchy

6

among intrinsic evidence. That is, the Court *first* looks to the words of the claims themselves, both asserted and non-asserted to define the scope of the patented invention. *Vitronics* at 1582. Here, because none of the exceptions apply, the "heavy presumption" that claim language is afforded its "ordinary and customary meaning" applies and the claim language itself is central in interpreting the language of the claims. Only when the words of the claims themselves required additional clarification, the Court looks to other intrinsic and extrinsic evidence. *Id.*

## III.   THE CONSTRUCTION OF THE CLAIM TERMS IN THE '754 PATENT

In reviewing the parties proposed construction of disputed claims terms and phrases, a pattern emerges:

On the one hand, Plaintiff seeks to interprets the claim language according to its "ordinary and customary meaning" as is required in most cases by the Federal Circuit's presumption in favor of such construction. However, particular claim term constructions urged by Defendant are only those that would be useful to it in the context of its non-infringement contentions.

## IV.   THE CONSTRUCTION OF CERTAIN AGREED UPON CLAIM TERMS PURSUANT TO L. Pat. R. 4.3(a) AFFECTS THE CONSTRUCTION OF CERTAIN TERM CLAIMS AND PHRASES UPON WHICH THE PARTIES DO NOT CONCUR

For example, the parties have agreed that the term "bottom surface" means the sole, or the bottom of a golf club head that would normally touch the ground, but separate from which the skid surface, if any, extends, not including the sidewalls or skirts of the golf club head."

However, Defendant seeks to improperly import "a flatness" limitation regarding the bottom surface of the club head into the claims. *Nothing* in the claims, specification, or other intrinsic evidence in the case *justifies the importation of any limitation of flatness* into the construction of the bottom surface of the golf club head. As a matter of fact, the bottom surface of club heads, dating to their invention hundreds of years ago, have featured bottom surfaces that were not flat. At the time of the patent's filing, curved or irregularly shaped bottom surfaces were common in the art. Nowhere in the patent (claims or specification) does the inventor use the word "flat." All of the relevant figures in the patent (Figs. 4, 9 and 10) show *curved bottom surfaces* on the golf club head. Thus, to now add a flatness limitation to the claims would be to improperly limit the claim scope and, therefore, Defendant's claim construction, to the extent it relies upon such a flatness limitation, must be rejected.

## V.   CLAIMS AT ISSUE

The construction issues before the Court relate to the following claims.

### A. Re-Issue Claim 1

> "1.     An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, wherein the improvement comprises:
> an aerodynamic configuration on, and substantially parallel with, said bottom surface adjacent said rear surface in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face, said aerodynamic configuration further including a skid surface formed on and raised from said bottom surfaces, said c-shaped slot transecting a virtual centerline passing through said ball striking face and said rear surface of said club head."

**B.      Re-Issue Claim 9**

"9.  An aerodynamic golf club head including a club head body having a heel, toe, rear surface, ball striking face, upper surface and bottom surface, in which the improvement comprises:

an aerodynamic configuration within, and substantially parallel to, said bottom surface, adjacent said rear surface, in the form of a c-shaped slot having an open end facing forwardly toward said ball striking face, said slot offset from, and a portion thereof passing through, a virtual centerline passing transversely through a heel-to-toe axis of said club head. "

## VI.    CLAIM TERM "SUBSTANTIALLY PARALLEL WITH"

| Defendant's View | Plaintiff's View |
|---|---|
| *substantially parallel with* means the flat plane of the c-shaped slot and the flat plane of the sole/bottom surface of the golf club head are essentially parallel to each other, and the c-shaped slot therefore does not extend into the side walls or skirt. | *substantially parallel with*: The phrase 'substantially parallel with,' as used in Claims 1 and 9, relates to the relationship between an aerodynamic configuration in the form of a C-shaped slot formed on a curved surface and the curved bottom surface, adjacent to the rear surface, of the aerodynamic golf club head. This phrase has been discussed in, and derives from, the U.S. Patent Office file history of the re-examination of the patent-in-suit which is intrinsic evidence. Such evidence is supportive of the view that this phrase is a relative, not an absolute one. |

The view of each party regarding substantially parallel with" incorporates the disputed claim term "c-shaped slot," which is addressed separately below.  Nonetheless, the essential difference in the proposed constructions of the respective parties lies in the issue of whether the phrase "substantially parallel with" can encompass parallelism between curved surfaces.  In other words, for the Defendant to prevail with respect to its proposed construction of "substantially parallel with," the Court must find that the "c-

shaped slot" of the golf club head in question must lie on a flat plane and that the bottom surface of the golf club head must at all times also lie in a flat plane.

In its evidence in support of its claim construction in its Pat. R. 4.3(b) submission, the Plaintiff argued that terms such as "substantially" are of relative nature and present issues of fact for the jury, not issues of law suitable for a *Markman* Hearing. *Modine Mfg. Co. v. VSITC* 75 F.3d 1545, 1551 (Fed. Cir. 1996) *and Anchor Wall Systems, Inc. v. Rockward Retaining Walls*, 2003 WL 21920278 at * 78 (Fed. Cir., 2003). As such, Plaintiff asserts that the term "substantially parallel," apart from the meaning of the phrase "parallel with, " provides flexibility to the manner in which the entire phrase may be properly construed and, as such, is clearly supportive of Plaintiff's argument (see below) that the phrase substantially parallel certainly includes parallelism between curved surfaces and, here, a curved plane surface of a c-shaped slot and a curved surface of a bottom of the golf club head. That is, whether or not the specification of the '754 patent shows a c-shaped slot upon or within a flat surface, or whether or not it does so in any particular embodiment of the '754 patent, is not limiting of the claims that use the term "substantially parallel" or "substantially parallel with," this particularly in that Figs. 4, 9 and 10 show a club head with curved bottom surfaces.

Since the patent does not include any limitations on the manner in which the planes of the parallel surfaces are defined, the patent allows a broad interpretation that the general plane of the slot and the plane of the bottom surface may be substantially parallel regardless of the center of the club head. Likewise, the patent broadly allows the plane of the c-shaped slot to be defined relative to the plane of the bottom surface. As detailed

below, the patent does not include the Defendant's proposed limitation that the bottom surface of the slot and the bottom surface of the golf club both be flat. In fact, the patent never uses the term "flat" or the like. As is known in the art of golf club design, the bottom surfaces of golf clubs typically are not flat.

More specifically, shading of slot 130 and surface 330 in Figs. 1, 2, 4, 5 (by phantom lines) and 9, all indicate curved surfaces. Further shade lines in Fig. 2 (Ref. No. 124). Fig. 4, Fig. 7, (Ref. No. 224), Fig. 9 and Fig. 10 of the patent indicate that the bottom surface of the club possesses a curvature as do the slots 330 and 440 per the shading thereof in Figs. 9 and 10 respectively. Thus, there is no limitation of flatness of the slot or the bottom surface of the club required by the patent, apart from the centerline cross-sectional example of Fig. 5 on which Defendant relies.

"Substantially parallel" is not a complicated term that requires construction or an expert opinion. It is undisputed that primarily "parallel" means "everywhere" equidistant. The ordinary meaning of the phrase "substantially parallel" envisions some amount of deviation from exactly parallel.

It is the claim limitation, as a whole, that must be considered in claims construction…" *Anchor Wall, supra,* at 1311. cf: *Eco Lab, supra,* at 1367; *Andrew Corp., supra,* at 821-22; *Pall Corp. v. Micron Separation, Inc.,* 66 F.3d 1211 (Fed. Cir. 1995)

In *Cordis Corp. v. Medtronic Ave, Inc.,* 339 F.3d 1352, 1363 (Fed. Cir. 2002) the Federal Circuit upheld the District Court's interpretation that, "[f]or a connector member

to be "substantially parallel" to the tubular members, the district court stated, the connector member 'must run in substantially the same direction as the longitudinal axis of the adjacent tubular members. . . . This means 'that the slots and the connectors run in the same direction and are substantially aligned with one another.'"  Similarly, in *Samson Mfg. Corp. v. Austin Precision Prods.*, 2010 U.S. Dist. LEXIS 64287, *16 (Dist. Mass. 2010) (Exh. "M"), the court held that, "substantially parallel to" means "largely extending in the same direction as."  Likewise, in *Sundance, Inc. v. Demonte Fabricating Ltd.*, 485 F. Supp. 2d 805, 808 (E.D. Mich. 2008), "substantially parallel" was interpreted according to the plain and ordinary meaning of the terms.[1]

Here, "substantially parallel" should be interpreted according to the plain and ordinary meaning of the words.

1.  <u>Defendant's Proposed Definition Improperly Limits the Claim Language</u>

Defendant seeks to define "substantially parallel with" as a planar c-shaped slot relative to a flat bottom surface of the club head. This definition seeks to import several limitations, such as "flat bottom," which do not appear anywhere in the claims, the specification, or the prosecution history.   Therefore, Defendant's definition must be rejected.

---

[1] Numerous cases from various districts have interpreted claim that included the term "substantially parallel" and all have relied simply upon the plain and ordinary language of the term.  *See, for example: Free Motion Fitness, Inc. v. Cybex Int'l*, 423 F.3d 1343, (Fed. Cir. 2005); *Insight Tech., Inc. v. Surefire, LLC*, 2009 DNH 67, *116 (Dist. N.H. 2009) (Exh. "R"); *Zimmer Tech., Inc. v. Howmedica Osteonics Corp.*, 476 F. Supp. 2d 1024, 1050 (N.D. Indiana 2007); *P.N.A. Constr. Techs. v. McTech Group, Inc.*, 414 F. Supp. 2d 1228, 1236 (N.D. Ga).

The limitation "flat bottom" is also improper because the word "flat" *does not* appear in the claims or the specification of the patent. As a matter of fact, the figures (vis-à-vis the shading in Figures 1, 2, 6, 9, and 10) specifically serve to illustrate slots whose bottom is not flat. None of the evidence cited by Defendant imply a "flat bottom" limitation of the slot or of the bottom surface of the golf club. The "flat bottom" limitation is, therefore, improper.

In other words, the phrase "substantially parallel to," is not limited to a parallelism between two flat surfaces. As such, the concept of parallelism within or between the aerodynamic configuration and the bottom surface is not one which is limited to a parallelism between two flat surfaces. Fig. 5 of the '754 patent reflects but one embodiment, taken through a single cross-section of a golf club head.

Most importantly, Defendant's proposed construction violates the most basic maxim of claim construction that claim construction begins and ends in all cases with the actual words of the claim. *AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997), which include no such limitation

Further to the above, in the re-examination proceeding of this patent, plaintiff/patentee presented declarations responsive to certain issues which had arisen, these inclusive of a declaration of one John P. Gillig (Exh. B herewith) which, at ¶17 thereof stated as follows:

"17.   Antonious sought to achieve the above [reference to reduction of aerodynamic drag] by providing a C-shaped aerodynamic slot adjacent to the rear surface

13

of the club and upon the bottom surface at a position generally following the contour of the club body."

Neither the re-examination examiner nor, to the knowledge of the Plaintiff, the within Defendant has never taken exception to said statement of Gillig in his 2009 Declaration presented during the re-examination.  This is similar to the conclusion reached in *Samson Mfg. Co. et al v. Austin Precision Products,* 2010 U.S. DIST. LEXIS 87,* 3 (DC . Mass, 2010).

¶19 of this Declaration, Gillig addressed the very basis of Defendant's "parallelism" argument, in which he states; "[a]s may be noted in Fig. 5, the aerodynamic slot 130 (which as above noted is common to all embodiments) defines a plane which is substantially parallel to both the bottom surface or the sole plate and the crown of the club.  Therein, the aerodynamic slots 330 and 430 shown in Figs. 9 and 10 occupy the same plane as the slot shown in Fig. 5, i.e., a plane substantially parallel with the bottom and top surfaces of the club."

Given that the claims at issue make no reference to "the crown of the club," Gillig's comments relative thereon do not relate to any issue of claim construction. However, his remarks at ¶17 to the effect that the "C-shaped aerodynamic slot adjacent to the rear surface of the club and upon the bottom surface generally follows the contour of the club body, taken in combination with his above quoted remarks of ¶19 (none of which remarks are contradicted by any intrinsic evidence of any form), render support to Plaintiff's position that any limitation of "flatness" to either the bottom surface of the club, the plane of the c-shaped slot, or the base of the c-shaped slot, is without basis in

14

the specification or the PTO file histories.   Defendant relies upon the front to rear cross-sectional view of Fig. 5.   This embodiment, however, like all embodiments in the '754 patent do not exclude the possibility that the patent's c-shaped slot and the plane of the bottom surface of a golf club are, in the invention of the '754 patent, substantially parallel with each other regardless of the contour of the bottom of the club head, i.e., an aerodynamic slot upon the bottom surface and which also generally follows the contour of the club body.   Most importantly, no limitation in either re-examined Claim 1 or 9 adopts such a limitation of parallelism only between flat surfaces.   As such, the Defendant's proposed construction of "substantially parallel with" should be rejected by this Court.

While the re-examination prosecution history discussed a "substantially flat bottom" as to one embodiment of the invention, as one may note from the side or end elevational view of Fig. 4 of the drawings of the patent, that the bottom of the club head is not flat but, actually, is curved in a fashion typical of many golf club heads.

Further, in Defendant's listing of "evidence supporting Defendant's construction" with respect to the claim term "substantially parallel with" it, at Page B3 of its L. Pat. R. 4.3(b) submission, adverts to its own Bates production document Nike 0006309 which is Page 17 of Docket 113 of an earlier case of Plaintiff's in which some of the same claims terms were at issue, this to the effect that "the concept of parallelism within or between the aerodynamic configuration in the bottom surface is not one which is limited to a parallelism between two flat surfaces."   Accordingly, the Defendant has cited as extrinsic

evidence a sentence from an earlier *Markman* Brief of Plaintiff involving the same patent, which sentence is supportive of Plaintiff's position on this issue.

## VII.  CONSTRUCTION OF CLAIM TERM: "C-SHAPED SLOT"

The parties' positions regarding this phrase are as follows:

| Defendant's View | Plaintiff's View |
|---|---|
| *c-shaped slot* means an aerodynamic slot characterized by a flat bottom surface and a c-shaped profile, in the bottom surface/sole, not the sidewalls, of the golf club head | *c-shaped slot* means "any generally C-shaped channel" |

As above, the primary difference in respective positions of the parties lies in the Defendant's view that the term "c-shaped slot" as used in the claims at issue means an aerodynamic configuration which is characterized by a flat bottom surface.  Plaintiff, in part for the reasons set forth above, does not agree with such an importation of a limitation of "flatness" into the language of the claims since there is no basis therefore.

The term "c-shaped slot" therefore should be interpreted according to its plain and ordinary meaning because it is not complicated and does not require the explication proposed by Defendant.  Defendant apparently does not question the patent's own definition of "slot" since the parties agree on the meaning of "aerodynamic configuration"  "Slot" then is a broad term, as used in the '754 patent.  As such, "c-shaped slot" is also a broad term, explained by the patent itself at Col. 3, Lines 1-6, as follows:

"The aerodynamic slot 130 catches air just behind the ball striking face 122 and directs it toward the rear surface 120 within the curved walls of the c-shaped slot 130 of the club head 100.  The air is expelled rearwardly out of the slot to minimize turbulence and reduce drag as the club head 100 is swung."

The Federal Circuit has repeatedly emphasized the "heavy presumption" that a claim term will be given its ordinary and customary meaning as viewed by the ordinary skilled artisan.  *See: Apex Inc. v. Raritan Computer, Inc.,* 325 F.3d 1364, (Fed. Cir. 2003); *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.,* 318 F.3d 1143, (Fed. Cir. 2003); *SunRace Roots Enterprise Co., Ltd. v. SRAM Corp.,* 336 F.3d 1298, 1302, 1305, (Fed. Cir. 2003).  Here, there is no reason to deviate from the ordinary and customary meaning of the term.  "c-shaped slot" should be interpreted as just that: a slot or channel shaped like the letter "C,"  without any limitation as to the plane of the slot, or plane or of its base.

The term "C-shaped" has appeared in numerous patents that have been litigated for patent infringement and courts have consistently interpreted the term according to its ordinary and customary meaning.  *See, e.g.: Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,* 2010 U.S. Dist. LEXIS 36127, *26 (S.D. Cal. 2010); *Lisle Corp. v. A.J. Mfg. Co.,* 289 F. Supp. 2d 1048, 1059 (N.D. Ill. 2003); *Senior Indus. v. Thomas & Betts Corp.,* 2001 U.S. Dist. LEXIS 16901, *27-28 (N.D. Ill. 2001); *Tapco Int'l Corp. v. Van Mark Prods. Corp.,* 1999 U.S. Dist. LEXIS 13351, *17-18 (E.D. Mich. 1999); *California*

17

*Medical Prods. v. Tecnol Medical Prods.*, 921 F. Supp. 1219, 1238 (Del. 1999); *Insight Technology, Inc. v. Surefire, LLS,* 618 F. Supp. 2d 2114 D.N.H. 2009).

Therefore, "c-shaped" should be interpreted according to the ordinary and customary meaning of the term.

Defendant, as support for its view, refers to Figs. 1, 2, 5, 9-10 of the patent-in-suit. (Page B.4 of the Joint Claim Construction Chart), but to import limitations from the drawings to interpret "c-shaped" or any term would be a direct violation of the rules of claim construction: the mere fact that one patent drawing depicts a particular embodiment of the patent does not operate to limit the claims to that specific configuration. In any event, Figs. 4, 9 and 10 do even show a flat bottom surface or, by reference, a c-shaped slot with a flat bottom or base, as Defendant contends. *Hockerson-Halberstadt, Inc. v. Avia Group Int'l,* 222 F.3d  951 956 (Fed. Cir. 2000); *Anchor Wall System v. Rockwood Retaining Walls, Inc.* 340 F.3d 1298, 1306-07 (Fed. Cir. 2003).

Defendant cannot reference any estoppels in either the specification or the Patent Office histories which would limit the generic definition of c-shaped slot as set forth above.   Also, Plaintiff notes that the phrase "c-shaped slot" appeared in the original language of original Claim 4 of the '754 patent application and, as such, was always an integral part of the specification. The form of the phrase was never altered.

Defendant also ignores the manner in which this term has been used in other golf-related patents or construed by the courts.  "C-shaped" appears in U.S. patents related to golf clubs, such as U.S. Patents 4,832,338; *5,810,675;* 6,890,267; and 7,717,803 which

illustrate the generic nature of some terms as used in the art of golf clubs and golfing. See Exhs. C and D herewith, and the reference in the '267 patent (Exh. D) to a "c-shaped peripheral weight 22" which is complemental to a "concave slot 26." The term c-shaped therefore should be construed according to its ordinary meaning to one skilled in the art.

## VIII.   CLAIM TERM "SKID SURFACE"

The position of the parties with respect to the construction of the claim "skid surface" is as follows:

| Defendant's View | Plaintiff's View |
|---|---|
| *skid surface* means a surface of the golf club head formed on and raised from the bottom surface so as to extend outwardly from the bottom surface/sole, separated from the bottom surface by the spacer wall, and designed to skim across the ground when the club head is swung | *skid surface* means a surface of the golf club head formed on and raised from the bottom surface so as to extend outwardly from the bottom surface/sole, and designed to skim across the ground when the club head is swung |

As may be noted, the parties' view of this phrase differs only in the manner in which the rear of the skid surface may extend from the bottom surface of the club head. Defendant's construction requires a skid surface elevated by a standalone or discrete spacer wall. Plaintiff contends that the spacer wall may be integrated into other elements of the aerodynamic configuration provided there is no change in function of the skid surface and an actual elevation of the rear of the skid surface is provided. This is more fully elaborated below in Plaintiff's discussion of a longer claim phrase that employs the term "skid surface."

As may be noted, the only difference in the proposed constructions of the parties of the term "skid surface," lies in Defendant's inclusion of the phrase "separated from the bottom surface by the spacer wall." Accordingly, a resolution of the next disputed claim term listed, starting at Page B.13 of the parties' Joint Claim Construction Chart (D.E. 35), will essentially resolve any issue of construction relative to the term "skid surface."

## IX. CLAIM TERM: "WALL SEPARATING"

Thusly, the views  of the parties with respect to the phrase "wall separating said skid surface from said bottom surface" is as follows:

| Defendant's Veiw | Plaintiff's View |
|---|---|
| *wall separating said skid surface from said bottom surface*  means a spacer wall separating the bottom surface from the skid surface, where the spacer wall is separate and distinct from the perimeter walls of the c-shaped slot | *wall separating said skid surface from said bottom surface:* "The only term in this phrase not otherwise construed or discussed herein is 'wall.'  Plaintiff contends that 'wall' in this phrase means any non-horizontal surface that separates the skid surface from the bottom surface." |

Here, the essence of the parties' difference of opinion lies with the term "spacer wall" particularly since, as above suggested, a resolution of this term will leave little left to be resolved with respect to the respective positions regarding the term "skid surface."

The '754 patent is replete with language which explains the meaning of this term and therein is supportive of Plaintiff's view that the front-to-rear cross-sectional view of Fig. 5 of the patent (see below) is simply representative of one of a number of geometries which fall within the scope of Claim 1 as the terms "spacer wall" and "skid surface" are used. For example, the patent at Col. 1, Lines 58-63 states:

"The club head may also include a raised sole plate on the bottom surface having a spacer or wall which also provides an aerodynamic effect and creates a skid structure enabling the club to skim across the ground when the club head is swung to hit a golf ball."

Similar language exists at Col. 3, Lines 6-8 of the patent to the effect:

"At the same time, the skid 126 and spacer walls 128 also serve to direct the air flow rearwardly to increase laminar flow in that area of the club head 100." Further, at Col. 3, Lines 13-15 "...a skid and spacer wall 228 separate the skid surface 226 from the bottom surface 225."

Simply put, the terms "skid surface" and its "spacer wall" are defined by their function, as opposed to their exact location or geometry.

21

In summary, the Defendant's proposed construction of "spacer wall" and therefore of "skid surface" is one which correlates to the literal embodiments shown in Figs. 1, 2, 5 and 7 of the patent and, *inter alia*, ignores the potential construction of "wall" and therefore of "skid surface" that may be derived from Figs. 4, 9, 10 and Claim 1 itself.   That is, a construction in which a portion of the skid surface is built upon or built diagonally or otherwise off of an inner surface of the c-shaped slot.   This construction, which is entirely consistent with Claim 1, may be illustrated in the hypothetical images below labeled Fig. 5A, 5B and 5C.



FIG. 5A

FIG. 5B



FIG. 5C



Each of these are variations of Fig. 5 of the patent.  However, Fig. 5 has been modified

from the actual Fig. 5 of the '754 patent to illustrate a few of the geometries of the wall

128 separating the skid surface 126 from the bottom surface 124 which Plaintiff contends

fall within the scope of Claim 1.  In original Fig. 5 and description thereof in the '754

23

patent, the "wall" or "spacer wall" is denoted by element 128. However, in Fig. 5A, it is denoted as surface 128A and, more particularly, spacer wall 128A begins to the right of the arrow shown in the figure and merges into skid surface 126A. That is, the inner wall, marked 130A, of the c-shaped slot 130, is deemed to end at the arrow and spacer wall 128A is deemed to begin to the right at the arrow shown in Fig. 5A.

A similar notation follows with respect to the hypothetical Figs. 5B and 5C above.

That is, an alternative structure of spacer wall 128 of the '754 patent which Plaintiff deems to define the scope of the invention as recited in Claim 1 is shown as wall 128B in Fig. 5B. Therein, an inner surface 130B of c-shaped slot 130 ends at the location of the arrowhead in the figure. However, beyond that point, surface 128B is deemed, under the Plaintiff's urged construction of the term "wall" in the phrase "wall separating said skid surface from said bottom surface, " to begin to the right of the arrowhead and simply represents an upward extension of surface 130B. In other words, spacer wall 128B is simply an extension of inner wall 130B of the c-shaped slot 130, however the purpose of wall 128B being to provide an elevation of skid surface 126B relative to bottom surface 124.

Fig. 2 of the patent is shown below.



Stated otherwise, none of the purposes or functions of the spacer wall 128 described in the specification of the '754 patent include or limit where, upon the bottom surface of the club head, the spacer wall 128 can begin or how wide it can be.  That is, neither the language at, for example, Col. 1, at Lines 58-63 that "[T]he club head may also include a raised sole plate on the bottom surface having a spacer wall which also provides an aerodynamic effect and creates a skid structure enabling the club to skim across the ground surface when the club head is swung to hit a golf ball" nor any other intrinsic evidence contain any limitation as to where the spacer wall 128 may be located relative to the inner wall of the c-shaped slot or what its angulation or relation relative to that wall must be.  Rather, the patent, at Col. 3, Lines 6-8, simply require that "the skid [surface] 126 and spacer wall 128 also serve to direct airflow rearwardly to increase laminar flow in the area of the club head 100."  Similarly, at Col. 3, Lines 14-16 to the effect that "a spacer wall 228 separates the skid [surface] 226 from the bottom surface 225."

That is, in no embodiment of the '754 patent, nor in any comment or remark in the intrinsic evidence does a limitation exist as to where the spacer wall 128 can begin relative to the inner surface of the c-shaped slot or whether the spacer wall can simply constitute an extension of inner surface 130A, 130B or 130C (see above images) of the c-shaped slot, provided the requisite elevation of the rear of skid surface 126 relative to its front and the bottom surface is achieved such that the functionality thereof above recited is accomplished. Similarly, no limitation as to width of the skid surface exists. Certainly, based upon a plain reading of Claim 1, there is no such limitation. For example, Claim 1 speaks only to an:

> "aerodynamic configuration further including a skid surface formed on and raised from said bottom surface; said skid surface having a wall separating said skid surface from said bottom surface…"

Nothing in the above-cited language, or otherwise in the intrinsic evidence precludes where the front of the wall separating the skid surface from the bottom surface can begin and does not preclude the possibility that such wall may simply constitute an extension or elevation of the inner wall of the c-shaped slot.

As above noted, none of the language of Claim 1, or otherwise within the intrinsic evidence, places a limitation upon the width of skid surface 128. In fact, Figs. 9 and 10 suggest that a skid surface could readily be built-up upon the entire space in front of the c-shaped slot 330 or 450, i.e., upon the front of surfaces 325 or 425 respectively. In Fig. hypothetical Figs. 2A to 2C below, the skid surfaces 126A to 126C are shown slightly wider than in Fig. 2 of the '754 patent which also shows, but in perspective view, the above arguments relative to Figs. 5A, 5B, and 5C, that is, that the front spacer wall 128A,

26

may constitute a simple extension of the inner surface of c-shaped slot 130.    See

hypothetical Fig. 2A below.







*FIG. 2C*

Fig. 2B above shows a skid surface 126B in which essentially all side or lateral spacer walls exist as build-ups or extensions of the inner-most wall 130B of the c-shaped slot 130.  As noted above, nothing in the language of the specification or otherwise in the intrinsic evidence precludes such a construction of the terms "wall," "skid surface," or of "wall separating said skid surface form said bottom surface," and this additionally because such variations of the geometry of skid surface 126 and spacer wall 128, shown in Figs. 2 and 5 of the '754 patent, do not affect and conceivably, would improve the skid structure of the invention which Claim 1 sets forth, since the mass and length of the skid surface would be enhanced. **Similarly, the function of the embodiment of Figs. 9-10 could also be so improved, simply by adapting  the embodiment of Fig. 2 as shown in hypothetical Fig. 2C above.**

In view of the above, Plaintiff's urged construction of the term "wall" in the phrase "wall separating said skid surface from said bottom surface" should be deemed to mean "any non-horizontal surface that separates the skid surface from the bottom

surface." That is, such a wall or spacer wall need not define a separate or discrete wall relative to the inner-most surface or edge of the c-shaped slot.

If the term "wall" or "spacer wall" is construed as so urged by the Plaintiff, Plaintiff is then able to agree with Defendant's proffered definition of skid surface, namely that:

"skid surface means a surface of the golf club head formed on and raised from the bottom surface and extending outwardly from the bottom surface/sole, separated from the bottom surface by the spacer wall and designed to skim across the ground when the club head is swung."

## X. __CLAIM TERM "OFFSET FROM"__

The parties respective views on the construction of this phrase are as follows:

| Defendant's View | Plaintiff's View |
|---|---|
| ___offset from___ means substantially, rotationally offset relative to the virtual centerline | ___offset___ means "existing or disposed at a displacement from the virtual centerline of the club head as that phrase is defined above." |

Defendant, at B.17 of the Joint Claim Construction Chart (D.E. 35), accepts as extrinsic evidence Webster's definition of "offset" to mean "a displacement," averting to Trust Bates No. 00955. This alone should end the discussion on this issue since a displacement may be linear, rotational or a combination thereof.

Defendant alludes to various locations in the patent and elsewhere in the intrinsic record at which the term "offset" or phrase "offset from" is used, but none of these references to "offset" carry with it any limitation as to the nature of the offset. The fact

29

that the embodiment of Figs. 9 and 10 happen to illustrate an embodiment of the c-shaped slot that is rotationally offset when compared to the embodiments of Figs. 1-8, does not constitute a limitation that can be properly imported into the claims.

Plaintiff notes that Section Line 5-5 of Fig. 3 defines an embodiment at the centerline in which, in the language of Claim 9, the c-shaped slot can be offset relative thereto. See Col. 3, Lines 25 to 30 of the patent, describing Figs. 9 and 10, explaining the term "offset" in this context:

"A bottom 325, a side surface 327 and an aerodynamic slot 330 which is offset in the direction of the toe 316 of the club head 300. Fig. 10 shows another embodiment similar to Fig. 9. A golf club head 400 and include a bottom surface 425, a side surface 427 and an aerodynamic slot 430 which is offset in the direction of the heel 414 of the club head 400."

As such, the specification does not recite or suggest a form of "offset" relative to the term "centerline" that must be accomplished using a vertical axis of rotation apparently through the center of gravity of the club head.

In accordance with the "heavy presumption" in the Federal Circuit's rules of claim construction, simple terms such as "offset" should be interpreted according to its customary and ordinary meaning. See, e.g.: *Cordis Corp. v. Boston Sci. Corp.,* 561 F.3d 1319, 1324 (Fed. Cir. 2009); *Allen Eng'g Corp. v. Bartell Indus., 299* F.3d 1336, 1345 (Fed. Cir. 2002); *Sailor, Inc. v. Colt's Mfg. Co.,* 26 Fed. Apex. 966, 971 (Fed. Cir. 2001).

Defendant seeks to confuse the Court or finder of fact with a convoluted interpretation that imposes a new and unfounded limitation on the term "offset." That is, Defendant urges a vertical axis of rotation, apparently passing through the center of gravity of the club head, about which the c-shaped slot must rotate.   While one may perceive this limitation in the embodiments of Figs. 9-10, there is no basis to read such a limitation into the claims

## XI.    CONCLUSION

In conclusion, Plaintiff respectfully requests that the Court adopt the Plaintiff's construction of claim terms as set forth hereinabove.

In reviewing the parties' proposed claim constructions a pattern is clear: Plaintiff seeks to interpret the claim language according the Federal Circuit's "heavy presumption" that terms be afforded their "ordinary and customary meanings." Meanwhile, Defendant seeks to impermissibly import limitations into the claims which are helpful to its non-infringement contentions.   Because Defendant's interpretations violate the claim construction rules established by the Federal Circuit, they must be rejected. The Court should, therefore, adopt Plaintiff's claim constructions as set forth herein.

Respectfully submitted,


s/Melvin K. Silverman
Melvin K. Silverman, Esq.
One of Plaintiff's Attorneys
M. K. Silverman & Associates, P.C.
One Gateway Center
Suite 2600
Newark, NJ 07102
Phone: 973-508-5033
Facsimile: 888-545-6365
E-mail: mks@mkspc.com

Dated: November 5, 2012



Of Counsel:
Sepehr Daghighian, Esq.
Law Offices of Sepehr Daghighian
433 North Camden Drive, Suite 400
Beverly Hills, CA 90210
PH:  (310) 887-1333
FX:  (310) 887-1334
Email: sepehr@daghighian.com


Exhibits herewith:
A.  Original and Re-exam Certificate of '754 Patent.
B.  Gillig 2009 Re-Exam Declaration.
C.  Abstracts of U.S. Patent Nos. 4,832,338; 5,810,675; 7,17,803
D.  Copy of U.S. Patent No. 6,890,267 to Mahaffey.