UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRREVOCABLE TRUST OF ANTHONY J. ANTONIOUS,<br><br>        Plaintiff,<br><br>   v.<br><br>NIKE, INC., an Oregon Corporation,<br><br>        Defendants. | Civil Action No. 2:11-cv-06327-KM-JBC<br><br>MEMORANDUM OPINION<br>AND ORDER |

PRESENTLY BEFORE the Court is a Motion for Leave to Amend Pursuant to L. Pat. R. 3.7 by Plaintiff Irrevocable Trust of Anthony J. Antonious ("Plaintiff" or "the Trust"). [Docket Entry No. 97]. The Trust seeks leave to amend its document disclosures under L. Pat. R. 3.2(a) and (f) to include public documents generated by Defendant NIKE, Inc. ("Defendant" or "NIKE") and documents purportedly prepared with the permission of NIKE. [Docket Entry No. 97 at 2]. NIKE opposes the Trust's motion arguing that the motion lacks good cause, is untimely, and would ultimately cause it undue prejudice. [Docket Entry No. 98]. The Court considers the arguments of the parties without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons set forth below, the Trust's Motion for Leave to Amend Pursuant to L. Pat. R. 3.7 is DENIED.

    **I.    BACKGROUND**

The underlying action relates to United States Patent No. 5,735,754 (the "'754 Patent"). *See* Compl. ¶ 6. Plaintiff Trust owns the '754 Patent which purportedly covers an Aerodynamic metal wood golf club head. *See* Compl. ¶ 6. Defendant NIKE is a corporation organized under the laws of the State of Oregon which is in the business of selling golf clubs. *See* Answer ¶¶ 4, 13. The Trust alleges that NIKE directly infringed the '754 Patent by "among other things,

making, using, importing, advertising, offering for sale, and selling products infringing the '754 Patent including . . . various drivers, hybrids, and fairway woods sold under the name SQ DYMO, and other of Defendant's golf clubs." *See* Compl. ¶ 13.  The Trust further claims that NIKE indirectly infringed the '754 Patent by actively inducing its agents to "make, use, import, advertise, offer for sale, and sell products infringing the '754 Patent." *See* Compl. ¶ 24.

On or about October 27, 2011, the Trust filed the instant action against NIKE. [Docket Entry No. 1].  NIKE then filed its Answer on or about December 12, 2011.  [Docket Entry No. 8].  In March 2012, the Trust served its L. Pat. R. 3.2 disclosures.  [Docket Entry No. 98 at 2].  In response, NIKE provided its initial non-infringement contentions and production on June 5, 2012, denying that the accused clubs were "aerodynamic golf club heads" comprising an "aerodynamic configuration" because the accused clubs "produce[d] more drag and air turbulence when compared to aerodynamic clubs." [*Id.* at 2, Ex. A].  NIKE did not waver from this position.  In a status letter to the then-assigned magistrate judge dated February 1, 2013, NIKE argued that the accused clubs lack an "aerodynamic configuration." [Docket Entry No. 47].

On April 29, 2013, a *Markman* Hearing was held in this matter to address the disputed patent terms in the '754 patent.  [Docket Entry No. 52, 98 at Ex. C].  While the terms "aerodynamic golf club head" and "aerodynamic configuration" were not themselves the focus of the *Markman* Hearing, as the parties had previously agreed to the definition of these terms, the Trust acknowledged the significance of the "aerodynamic configuration" during the *Markman* Hearing.  [Docket Entry No. 98 at 2].  On January 8, 2014, the Honorable Kevin McNulty, U.S.D.J., issued an Order addressing claim construction.  [Docket Entry No. 55].  At the request of the parties, leave was granted to amend their "respective Local Patent Rules 3.1 – 3.4

infringement, non-infringement, invalidity, and validity contentions and responses pursuant to Local Patent Rules 3.7(a) and (e) . . ." [Docket Entry No. 67].  The Trust's Supplemental Infringement Contentions were served on or about July 23, 2014.  [Docket Entry No. 97 at 3].  NIKE served its responsive Supplemental Non-Infringement and Invalidity Contentions on or about September 26, 2014.  [*Id.*].  Again, NIKE denied that the accused clubs were "aerodynamic golf club heads" or exhibit an "aerodynamic configuration."  [Docket Entry No. 98 at 3, Ex. D].  The Trust then served its amended responses to the Invalidity Contentions on October 10, 2014.  [Docket Entry No. 97 at 3].

Fact discovery in this matter closed on February 25, 2015.  [*Id.*]  Expert Discovery was completed on May 7, 2015.  [*Id.* at 3].  In late May 2015, on the eve of the parties' summary judgment motion deadline, the Trust filed the instant motion to amend its L. Pat. R. 3.2 disclosures.  [Docket Entry No. 97].

**II.    STATEMENT OF LAW**

The Trust's motion to amend its infringement disclosures under L. Pat. R. 3.2 is governed by this District's Local Patent Rules.  The Local Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases."  *Warner Chilcott Co., LLC v. Mylan Inc.*, No. 13-6560 (MLC), 2015 U.S. Dist. LEXIS 74759 at *15-16 (D.N.J. June 9, 2015) (quoting *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F.Supp.2d 819, 822 (E.D. Tex. 2007)).  "The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."  *King Pharms., Inc. v. Sandoz, Inc.*, No. 08-5974 (GEB), 2010 U.S. Dist. LEXIS 50163 at *10 (D.N.J. May 19, 2010) (citation omitted).  That is not to say that the Local Patent Rules are a "straitjacket into which litigants are locked from the

3

moment their contentions are served . . ."  *Warner Chilcott Co., LLC*, 2015 U.S. Dist. LEXIS 74759 at *16 (citation omitted).  Instead, the Local Patent Rules provide a "modest degree of flexibility . . . at least near the outset" of litigation, for a party to amend its initial contentions and disclosures.  *See id.* (citation omitted).  But unlike the liberal standard for amending pleadings, amendments under the Local Patent Rules are "decidedly conservative."  *See King Pharms., Inc.*, 2010 U.S. Dist. LEXIS 50163 at *10.  It is under this backdrop that a motion for leave to amend under L. Pat. R. 3.7 is decided.

Pursuant to L. Pat. R. 3.7, a party may amend "any contentions, disclosures, or other documents required to be filed or exchanged . . . only by order of the Court upon a timely application and showing of good cause."  L. Pat. R. 3.7.  This includes any of the disclosures made under L. Pat. R. 3.2.  L. Pat. R. 3.7.  To succeed on a motion to amend under Loc. Pat. R. 3.7, the movant must show: (1) timeliness of the application, (2) good cause for the amendment, and (3) a lack undue prejudice to the adverse party.  *See Jazz Pharms., Inc. v. Roxane Labs., Inc.*, No. 10- 06108 (ES-CLW), 2012 U.S. Dist. LEXIS 107408 at *6 (D.N.J. July 30, 2012).  Undue prejudice is only considered when the movant has establish timeliness and good cause.  *See id.* at 22.

### III. THE PARTIES' ARGUMENTS

#### A. *Plaintiff's Position*

The Trust seeks to amend its Rule 3.2 disclosures to include the following nine (9) documents (attached to the Trust's moving papers as Exhibits (1) through (9)):

(1) the SQ DYMO trademark registration published on September 29, 2008;

(2) United States Design Patent No. D602,548 dated October 20, 2009;

(3) United States Design Patent No. D602,551 dated October 20, 2009;

4

(4) a 2009 article from "Golf.com" regarding the SQ DYMO$^2$ Fairway Woods;

(5) U.S. Patent No. 8,162,775 dated April 24, 2012;

(6) U.S. Patent No. 8,287,400 dated October 16, 2012;

(7) U.S. Patent No. 8,932,149 (the "'149 Patent") dated January 13, 2015;

(8) a January 11, 2011 article discussing the NIKE Dymo Driver from "Divot.com"; and

(9) a June 8, 2009 "Mr. Golf" article comparing the NIKE SQ1 DYMO TR8 with the Taylor Made R9. [Docket Entry No. 97].

In its moving papers, the Trust contends that these nine (9) documents (hereinafter collectively referred to as the "Documents") lend support to its position that the accused clubs demonstrate the "aerodynamic" properties claimed in the '754 patent. [Docket Entry No. 97]. The Trust argues that it has good cause for the motion—only recently becoming aware of the Documents. [Docket Entry No. 97 at 6]. The Trust posits that this awareness began on or about September 26, 2014, when NIKE served its Supplemental Non-Infringement Contentions. That, coupled with the deposition of NIKE's expert on May 6, 2015, sparked a fire within the Trust to "revisit[] several areas originally considered before the case was filed"— the culmination of which resulted in the discovery of "material prior are despite earlier reasonable searching." [Docket Entry No. 97 at 6]. The Trust further denies any delay in bringing the instant motion because "fact discovery had only ended on February 25, 2015 and that expert discovery, which these materials are, ended only a few days ago on May 7, 2015." [Docket Entry No. 97 at 6].

Based on the above, the Trust now seeks to amend its L. Pat. R. 3.2 disclosures to include the Documents. In the alternative, the Trust requests that the Court take judicial notice of the Documents. [Docket Entry No. 94].

### B. *Defendant's Position*

In its opposition, NIKE argues that the Trust's "motion to amend the record is untimely, there is no good cause for amendment, and amendment would prejudice NIKE." [Docket Entry No. 98 at 1]. Speaking to the issue of timeliness, NIKE claims that the Trust was aware of NIKE's "aerodynamic configuration" defense as early as June 2012 when NIKE served its initial non-infringement contentions. [Docket Entry No. 98 at 6]. NIKE goes on to argue that the Trust was, or should have been aware of the Documents well before it filed the instant motion. [Docket Entry No. 98 at 6-7]. As such, the Trust's request to amend is long after the purported 'new' information was available." [Docket Entry No. 98 at 6].

NIKE further argues that Trust's motion to amend lacks good cause because "the Trust has been anything but diligent throughout the discovery process." [Docket Entry No. 98 at 7-8]. Had the Trust conducted a "simple internet, patent, or trademark search for DYMO or NIKE" in June 2012—after NIKE served its Initial Non-Infringement Contentions—the Trust would have located the disputed documents well before the close of discovery. [Docket Entry No. 98 at 8].

Finally, NIKE claims it would suffer undue prejudice if Plaintiff were allowed to amend its disclosures so late in the litigation. [Docket Entry No. 98 at 9-10]. In sum, NIKE postulates significant delay in the resolution of this action if the Trust were allowed to "change the record after NIKE will submit its case-dispositive motion on June 5, 2015." [Docket Entry No. 98 at 11].

### IV. ANALYSIS

### A. *Good Cause*

Establishing good cause requires a showing of diligence—a burden squarely on the movant's shoulders. *See Jazz Pharms., Inc.*, 2012 U.S. Dist. LEXIS 107408 at *16. The movant

meets this burden when it makes an earnest effort to discover the basis for the proposed amendment—not just at the start of the litigation but throughout the discovery process. *See id.* Once this new information is discovered, the movant must then be diligent in seeking leave to amend. *Merck Sharp & Dohme Corp. v. Sandoz, Inc.,* No. 12-3289 (PGS)(LHG), 2014 U.S. Dist. LEXIS 37002 at *20 (D.N.J. Jan. 6, 2014) (citation omitted). Here, the Trust cannot meet this burden.

      The Trust seeks to establish good cause by availing itself of one of the non-exhaustive examples of good cause provided under L. Pat. R. 3.7. [Docket Entry No. 97 at 6]. Specifically, the Trust points to L. Pat. R. 3.7(b) which states that a finding of good cause may be supported by the "recent discovery of material prior art despite earlier diligent search." L. Pat. R. 3.7(b). But the Trust's reliance on L. Pat. R. 3.7(b) is unavailing. As a cursory matter, the Documents do not fall under the auspices of "prior art." Broadly speaking, the term "prior art" refers to documents or disclosures that may affect the patentability of a claimed invention. *See* 35 U.S.C. § 102. In this instance, the Trust is not seeking to challenge the patentability of NIKE's golf clubs. Indeed, the Trust seeks to establish NIKE's infringement of its own patent. *See Compl.* As such, the Documents, used in this way, do not qualify as prior art under L. Pat. R. 3.7.

      Moreover, even if the Documents did qualify as prior art, the Trust fails to show diligence in its search. By its own admission, the "aerodynamic" aspects of the '754 patent was one of "several areas originally considered [by the Trust] before the case was filed." [Docket Entry No. 97 at 4]. Undoubtedly, the "aerodynamic configuration" was firmly made an area of dispute when NIKE served its initial non-infringement contentions on June 5, 2012. [Docket Entry No. 98 at 2, Ex. A]. If that were not enough to highlight the issue, the "aerodynamic configuration" was addressed on two subsequent occasions; in the February 1, 2013 status letter

to the Court and during the April 29, 2013 *Markman* Hearing.  [Docket Entry No. 47, 52, 98 at Ex. C].  At the latest—giving the Trust an inordinate amount of leeway—the Trust should have been aware of NIKE's position by April 29, 2013.  At that time, a simple internet, patent, or trademark search for DYMO or NIKE would have uncovered documents (1) through (6), (8) and (9).  Diligently conducting that same search throughout the discovery process would have also uncovered document (7) soon after the patent published on January 13, 2015.[1]  Instead, the Trust waited seventeen months to "revisit" this issue and an additional eight months to file the instant motion.  Based on these facts, the Trust cannot establish good cause sufficient to support its motion to amend.

      B.  *Timeliness*

Similarly, the Trust fails to show that its application was timely.  To establish timeliness, the movant must show that it acted promptly in seeking leave after discovering new information. *See Jazz Pharms., Inc.,* 2012 U.S. Dist. LEXIS 107408 at *6 (citing *O2 Micro Int'l, Ltd. v. Monolithic Power Systems, Inc.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006)).  Here, Plaintiff discovered the trademark registration, design patents, and promotional materials of the DYMO fairway (Ex.'s (1) through (4)) before the commencement of the litigation.  [Docket Entry No. 97].  Exhibits (8) and (9) were publicly available well before commencement of this action and Exhibits (5) and (6) were available before the Trust's Supplemental Infringement Contentions were served on July 23, 2014.  [Docket Entry No. 97].  Exhibit (7) was available as early as January 2015.  Notwithstanding the fact that the Documents were discovered, or should have

---

[1] T seeks to include the '149 patent to explain "many of the parameters of turbulence, laminar flow and drag that exist in this case."  Arguably, this same information could have been culled as early as December 5, 2013—the prior publication date for the '149 Patent application.  The published '149 Patent Application contains a similar, if not identical explanation of turbulence, laminar flow, and drag.

been discovered by January 2015, the Trust waited an additional four months to bring its motion to amend. This delay does not amount to timeliness. *See, e.g.*, *See Jazz Pharms., Inc.*, 2012 U.S. Dist. LEXIS 107408 (denying motion for leave to amend Local Patent Rule disclosures where the defendant located prior art in September and delayed filing its motion until the following February); *Celgene Corp. v. Natco Pharma Ltd.*, No. 10-5197, 2014 WL 6471600, at *4 (D.N.J. Nov. 18, 2014) (denying motion for leave to amend Local Patent Rule disclosures where the party "ha[d] been aware of the responses at issue" for almost two years).

### C. Undue Prejudice

The Federal Circuit has made clear that the Court need only consider the issue of prejudice if the moving party's application was timely and satisfies the good cause requirement. *Jazz Pharm., Inc. v. Roxane Labs.*, Inc., 2012 WL 3133943, at *8 (D.N.J. July 30, 2012) aff'd, No. CIV.A. 10-6108 ES, 2013 WL 785067 (D.N.J. Feb. 28, 2013). Because the Trust's motion fails to establish either good cause or timeliness, the Court need not consider the issue of prejudice.

### D. Plaintiff's Request for Judicial Notice

In the alternative, the Trust requests that the Court take judicial notice of Exhibits (1) through (9). The Trust makes a similar request in its opposition to Defendant's Motion for Summary Judgment presently before the Honorable Kevin McNulty, U.S.D.J. [Docket Entry No. 108]. Since the decision to take judicial notice of these documents directly impacts NIKE's Motion for Summary Judgment, the District Judge is in a better position to address this request. Accordingly, in an effort to avoid inconsistent results, the Court declines to rule on this issue.

## V. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 15th day of October, 2015,

**ORDERED** that the Irrevocable Trust of Anthony J. Antonious's Motion for Leave to Amend Pursuant to L. Pat. R. 3.7 is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court terminate the aforementioned motion [Docket Entry No. 97] accordingly.

s/James B. Clark, III
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**